UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL RECOVERY AGENCY, INC. and DIVERSIFIED BILLING SERVICES, INC., | : : : : | CIVIL NO. **4:05-CV-0033** |
| Plaintiffs | : : | (Magistrate Judge Smyser) |
| v. | : : | |
| AIG TECHNICAL SERVICES, INC., AMERICAN INTERNATIONAL GROUP, INC. and ILLINOIS NATIONAL INSURANCE COMPANY, | : : : : : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

I.  Background and Procedural History.

        The plaintiffs, National Recovery Agency, Inc. (NRA) and Diversified Billing Services, Inc. (DBS), commenced this action by filing a complaint on January 6, 2005.  The defendants are AIG Technical Services, Inc. (AIGTS), American International Group, Inc. (AIG), and Illinois National Insurance Company (Illinois National).

        The complaint contains four counts.  In Count I, the plaintiffs are seeking a declaratory judgment that, pursuant to an insurance policy issued by defendant Illinois National, Illinois National must provide the plaintiffs, Dale Brumbach

and Steven Kusic[1], a defense in a case filed against them by
Forward Thinking, Inc. (Forward Thinking) in New Jersey
Superior Court as well as a declaratory judgment that defendant
Illinois National must indemnify them for the claims of Forward
Thinking.  In Count II, the plaintiffs are seeking damages on
a claim that the defendants breached the insurance contract by
failing to provide them a defense or indemnification in the
case filed by Forward Thinking.  In Count III, the plaintiffs
are seeking damages on a claim that the defendants acted in bad
faith in violation of 42 Pa.C.S.A. § 8371 and Pennsylvania
common law by failing to provide them a defense or
indemnification in the case filed by Forward Thinking.  In
Count IV, the plaintiffs are seeking damages on a claim that
the defendants committed fraud in the sale of the insurance
policy to the plaintiffs and in their performance under the
policy.

On March 1, 2005, the defendants filed an answer to the
complaint.  The parties subsequently consented to proceed
before a magistrate judge pursuant to 28 U.S.C. § 636(c).

On May 2, 2005, the defendants filed motions for
judgment on the pleadings.  By a Memorandum and Order dated
June 27, 2005, the court denied those motions.

---

[1] Dale Brumbach is or was the President of DBS and
Steven Kusic is or was an officer and owner of NRA.

2

II.  Defendants' Motion for Reconsideration.

On July 7, 2005, the defendants filed a motion for reconsideration of the Order of June 27, 2005 and a brief in support of that motion.  On July 25, 2005, the plaintiffs filed a brief in opposition to the motion for reconsideration, and on July 28, 2005, the defendants filed a reply brief in support of their motion for reconsideration.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  A district court may grant a party's motion for reconsideration when there exists: "(1) the development of an intervening change in the law, (2) the emergence of new evidence not previously available, or (3) the need to correct a clear error of law or prevent a manifest injustice." *Cohen v. Austin*, 869 F. Supp. 320, 321 (E.D.Pa. 1994).  If there is no new evidence or no clear error of law, the motion must be denied. *Clifford v. Jacobs*, 739 F. Supp. 957, 958-59 (M.D.Pa. 1990).  Mere disagreement with the court does not translate into a clear error of law. *Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 983 F.Supp. 595, 611 (M.D. Pa. 1996).  "A motion for reconsideration is not a tool to relitigate and reargue issues which have already been considered and disposed of by the court." *Id*.  "Nor is it to be

3

used to put forth additional arguments which could have been made but which the party neglected to make before judgment." *Waye v. First Citizen's Nat'l Bank*, 846 F.Supp. 310, 314 (M.D. Pa. 1994), *aff'd*, 31 F.3d 1175 (3d Cir. 1994).  In the interest of finality, courts should grant motions for reconsideration sparingly.  *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D.Pa. 1992).

In the Order of June 27, 2005, the court denied the defendants' motions for judgment on the pleadings on the basis that the language of the insurance policy and the complaint and amended complaint in the underlying Forward Thinking case were in dispute.  The court made that determination on the basis that the defendants in their answer to the complaint denied many of the paragraphs of the complaint which quoted language from the policy and which paraphrased the Forward Thinking Complaint and the Forward Thinking Amended Complaint.  The defendants denied the paragraphs of the complaint quoting language from the policy on the basis that "[t]he Policy speaks for itself and contains numerous provisions, conditions, and exclusions." *Doc. 12 at ¶¶16-17 & 19-25.*  The defendants denied the paragraphs of the complaint paraphrasing the Forward Thinking Complaint and the Forward Thinking Amended Complaint on the basis that those paragraphs purport to characterize the allegations of the Forward Thinking Complaint or Forward Thinking Amended Complaint which are writings which speak for

4

themselves.  *Doc. 12 at ¶¶28-39 & 45-95.*  In determining that
the language of the insurance policy and the complaint and
amended complaint in the underlying Forward Thinking case were
in dispute, the court erred by overlooking and by failing to
give controlling effect to paragraphs 14, 27 and 40 of the
defendants' answer in which the defendants admit that a true
and correct copy of the policy and a copy of the Forward
Thinking Complaint and the Forward Thinking Amended Complaint
are attached to the plaintiffs' complaint.  Given the
defendants' admissions in paragraphs 14, 27, and 40 of their
answer, the language of the insurance policy and the complaint
and amended complaint in the underlying Forward Thinking case
are not in dispute.  Since we erred in concluding otherwise in
the Order of June 27, 2005 we will grant the defendants' motion
for reconsideration and we will reconsider the defendants'
motions for judgment on the pleadings.

III.  The Defendants' Motions for Judgment on the Pleadings.

       A. Overview.

       As stated before, the plaintiffs are seeking a
declaratory judgment that defendant Illinois National is
required to provide a defense and indemnification under the
policy and the plaintiffs are seeking damages from the
defendants for breach of contract, bad faith and fraud.  In its
motion for judgment on the pleadings, defendant Illinois

National characterizes the claims of Forward Thinking as
contractual billing disputes.  Defendant Illinois National
contends that billing practices do not constitute "professional
services" under the policy and that they therefore are not
within the policy's coverage for "Wrongful Acts" of the insured
"committed solely in the conduct of the 'Insured's'
'Professional Services'."  Defendant Illinois National also
contends that Forward Thinking's claims arise out of a
contract, that the policy covers only negligent acts, errors
and omissions, and that contract claims do not sound in
negligence.  Defendant Illinois National also contends that
Forward Thinking is seeking the return of fees charged by the
insured and that therefore Exclusion M, which provides that the
policy does not apply to claims seeking the return of fees or
charges for services performed by any insured, applies to
preclude coverage.  Defendant Illinois National also contends
that the plaintiffs' bad faith claim must be dismissed because
it properly denied coverage under the policy and because it had
a reasonable basis for denying coverage.  Defendant Illinois
National contends that the plaintiffs' fraud claims should be
dismissed because the plaintiffs have failed to allege an
actionable misrepresentation, because the "gist of the action"
doctrine bars their fraud claims, and because they have not
pleaded fraud with particularity.  In their motion for judgment
on the pleadings, defendants AIG and AIGTS adopt the position
and reasoning of defendant Illinois National in its motion for

6

judgment on the pleadings.  In addition, defendants AIG and AIGTS contend that they are not parties to the policy and that therefore the plaintiffs' declaratory judgment claim and breach of contract claim should be dismissed against them.  Defendants AIG and AIGTS further contend that they are not insurers for purposes of Pennsylvania's Bad Faith Statute and that therefore the plaintiffs' bad faith claim against them should be dismissed.

   B.   Judgment on the Pleadings Standards.

   Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial."   In deciding a motion for judgment on the pleadings the court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the . . . nonmoving party." *Green v. Fund Asset Management*, 245 F.3d 214, 220 (3d Cir. 2001)(quoting *Institute for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc.,* 931 F.2d 1002, 1004 (3d cir. 1991)).  Judgment on the pleadings is appropriate only if the plaintiffs would not be entitled to relief under any set of facts that could be proved. *Id.*

C. Allegations in the Complaint and Policy Provisions.

The plaintiffs allege the following facts in their complaint.  Plaintiff NRA is a Pennsylvania corporation operating as a collection agency. *Complaint* at ¶1.  Plaintiff DBS is a Pennsylvania corporation which engages in the performance of precollect work. *Id.* at ¶2.  Defendant AIG is a Delaware corporation and an international insurance and financial services organization. *Id.* at ¶4.  Defendant Illinois National is an Illinois corporation engaged in the business of providing property and casualty insurance. *Id.* at ¶5.  Illinois National is a member company or division of AIG. *Id.*  Defendant AIGTS is a Delaware corporation engaged in the business of claims and litigation management services in various insurance lines, including professional liability. *Id.* at ¶3.  Defendant AIGTS is a member company of defendant AIG. *Id.*

The plaintiffs purchased an Errors and Omissions Liability insurance policy from defendant Illinois National. *Id.* at ¶14.  Both plaintiffs are named insureds on the policy. *Id.*

Under a section titled Coverage Agreements, the Policy provides:

> A.   The Company will pay on behalf of the
>      "Insured" "Damages" which the
>      "Insured" shall become legally
>      obligated to pay for any "Claim"

8

first made against the "Insured" and
reported to the Company during the
"Policy Period" for "Wrongful Acts"
of the "Insured" or another for whom
the "Insured" is legally responsible
committed solely in the conduct of
the "Insured's" "Professional
Services".

B.   The Company shall have the right and
duty to defend the "Insured" against
"Claims" for Damages for a covered
"Wrongful Act", even if the "Claim"
is groundless, false or fraudulent
and pay "Claims Expense", as defined
herein subject to the policy terms,
conditions and exclusions.  The
Company shall have the exclusive
right to designate legal counsel to
represent the "Insured" against such
"Claims".

The Company's duty to defend any "Claim" ends
after the applicable Limit of Liability has
been exhausted by "Claims Expenses", payment of
judgments, awards, or interest accruing thereon
prior to entry of judgment or issuance of an
award and settlements.

*Complaint, Exhibit A.*

The Policy defines "Claim" as follows:

1.   Any judicial, administrative or
arbitration proceeding initiated
against one or more "Insured"(s) in
which such "Insured"(s) may be
subjected to a binding adjudication
of liability for "Damages"; or
2.   Any written demand from a "Client or
Customer" or "Consumer" for money.

*Id.*

The Policy defines "Wrongful Act" as follows:

1.   Means a negligent act, error or
omission; or
2.    Libel, slander, malicious
prosecution, wrongful attachment,

9

> > wrongful eviction, wrongful entry,
> > false arrest, detention and
> > imprisonment, harassment,
> > interference with business, invasion,
> > infringement or interference with the
> > right of privacy; or
> >
> > 3.   A violation of the Federal Fair Debt
> >      Collection Practices Act (FDCPA) or
> >      the Fair Credit Reporting Act (FRCA)
> >      and as further amended, or other
> >      similar state statutes.

*Id.*

> The Policy defines "Professional Services as follows:
>
> 1.   Performance as a "Debt Collector";
> 2.   Dissemination of "Consumer Reports" or
>      "Credit Information" as a "Credit Bureau";
>      or
> 3.   Performance of "Check
>      Verification/Recovery Services" as a
>      "Check Verification/Recovery Office".

*Id.*

The Policy contains an exclusion which provides that the policy does not apply to claims "[s]eeking the return of fees or charges for services performed by any "Insured." *Id.*

On or about October 11, 2000 Forward Thinking filed a complaint against plaintiff NRA in the Superior Court of New Jersey. *Complaint* at ¶27 and Exhibit B.  Plaintiff NRA reported the complaint to defendant Illinois National and sought a defense and indemnification for the claims brought by Forward Thinking. *Id.* at ¶¶96 & 97.  By a letter dated November 9, 2000, defendant Illinois National, through AIGTS, informed plaintiff NRA that it would neither defend nor indemnify plaintiff NRA in the matter. *Id.* at ¶98 and Exhibit D.  The

10

basis for that decision was stated to be that the claim does not fall within the scope of the definition of "Wrongful Act" and because Exclusion M, which provides that the policy does not apply to claims seeking the return of fees or charges for services performed by any insured, precludes coverage. *Id.*  On or about April 22, 2002, Forward Thinking filed an amended complaint against plaintiff NRA, plaintiff DBS, Steven Kusic and Dale Brumbach. *Id.* at ¶¶40-41 and Exhibit C.  After receipt of Forward Thinking's amended complaint, plaintiff NRA again notified AIGTS and demanded that defendant Illinois National provide a defense and coverage under the policy. *Id.* at ¶114 and Exhibit E.  By a letter dated October 1, 2004, defendant Illinois National, through AIGTS, informed plaintiff NRA that it would not provide indemnification in the event of an adverse judgment or award. *Id.* at ¶115 and Exhibit F.  The basis for the decision was again stated to be that the claim does not fall within the scope of the definition of "Wrongful Act" and because Exclusion M, which provides that the policy does not apply to claims seeking the return of fees or charges for services performed by any insured, precludes coverage. *Id.* at Exhibit F.

D. Applicable Law.

Under Pennsylvania law, the interpretation of an insurance contract is a question of law. *401 Fourth St., Inc.*

*v. Investors Ins. Group,* ___A.2d___, 2005 WL 1688324 at \*3 (Pa. July 20, 2005).  The task of interpreting an insurance contract is generally performed by the court rather than a jury, and "[t]he purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *Id.* at \*4. "When the language of the policy is clear and unambiguous, a court is required to give effect to that language." *Id.*  "Ambiguous terms must be strictly construed against the insurer, but the policy language must not be tortured to create ambiguities where none exist." *Sikirica v. Nationwide Ins. Co.,* ___F.3d___, 2005 WL 1837010 at \*3 (3d Cir. Aug. 4, 2005).  "After determining the scope of coverage under a policy, the court must examine the complaint in the underlying action to determine whether it triggers coverage." *Id.* at \*9.

"The duty to defend is a distinct obligation, different from and broader than the duty to indemnify." *Sikirica*, *supra,* 2005 WL at \*9.  The duty to defend arises whenever the underlying complaint may potentially come within the insurance coverage. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir. 1999). "Furthermore, if a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Id.* "It follows that there may be a duty to defend without a duty

to indemnify." *Id.*  However, "[b]ecause the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend." *Sikirica*, *supra.,* 2005 WL at *9.  The insurer's duty to defend is determined solely by the allegations in the underlying complaint. *Visiting Nurse Ass'n v. St. Paul Fire & Marine Ins.,* 65 F.3d 1097, 1100 (3d Cir. 1995).  "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Frog, Switch, supra.,* 193 F.3d at 746.  "Any doubts regarding the insurer's duty to defend must be resolved in favor of the insured." *Western World Ins. Co. v. Reliance Ins. Co.,* 892 F.Supp. 659, 662 (M.D.Pa. 1995).  "However, the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered." *Erie Ins. Exchange v. Muff,* 851 A.2d 919, 926 (Pa.Super.Ct. 2004).  "Instead it is necessary to look at the factual allegations contained in the complaint." *Id.* "[C]overage clauses are interpreted broadly so as to afford the greatest possible protection to the insured." *Eichelberger v. Warner*, 434 A.2d 747, 750 (Pa.Super.Ct. 1981).  Whereas, exceptions to an insurer's general liability are interpreted narrowly against the insurer. *Id.*

E. Illinois National's Motion for Judgment on the
Pleadings.

1. Billing Practices and Professional Services.

Defendant Illinois National contends that the claims
asserted by Forward Thinking against the plaintiffs are billing
disputes and that the plaintiffs' billing practices do not
constitute processional services under the policy it issued.
Defendant Illinois National cites a number of cases where
courts have held that billing practices do not constitute
professional services.

Defendant Illinois National cites to *Reliance Nat'l
Ins. Co. v. Sears, Roebuck & Co, Inc.,* 792 N.E.2d 145, 146
(Mass. App. Ct. 2003), in which the court concluded that the
activity involved in billing a client for legal services is not
within the compass of professional services covered by a
malpractice insurance policy.  The court cited cases which
identified several markers for what are professional acts or
services including "specialized knowledge and skill that is
acquired through rigorous intellectual training." *Id.* at 147.
The court determined that billing for legal services does not
draw on special learning acquired through rigorous intellectual
training. *Id.* at 148.  The court concluded that except in
exceptional circumstances, "billing is not a professional

14

service [and] it does not come within the coverage of a
professional liability insurance policy . . . ."

Defendant Illinois National cites to *Harad v. Aetna
Caus. & Surety Co.,* 839 F.2d 979 (3d Cir. 1988).  The issue in
that case was whether the signing of a verification to an
answer and counterclaim by an attorney was a professional
service. *Id.* at 980.  The issue arose in the context of a
business owner's policy which contained an exclusion for
injuries arising out of the rendering or failure to render
professional services. *Id.* at 983.  The policy did not define
professional services.  *Id.* at 984.  The court cited cases
which recognized that the term "professional services" means:

> Something more than an act flowing from mere
> employment or vocation . . . [t]he act or
> service must be such as exacts the use or
> application of special learning or attainments
> of some kind. The term "professional" . . .
> means something more than mere proficiency in
> the performance of a task and implies
> intellectual skill as contrasted with that used
> in an occupation for production or sale of
> commodities.  A "professional" act or service
> is one arising out of a vocation, calling,
> occupation, or employment involving specialized
> knowledge, labor, or skill, and the labor or
> skill involved is predominantly mental or
> intellectual, rather than physical or manual.
> In determining whether a particular act is of a
> professional nature or a "professional service"
> we must look not to the title or character of
> the party performing the act, but to the act
> itself.

*Id.* at 984.  The court concluded that an attorney's acts of
drafting, signing and filing an answer and counterclaim go to
the heart of the type of services an attorney provides to his

15

clients and are professional in nature. *Id.* at 984-85.  The
court stated:

> [T]he practice of law, as other similarly
> regulated professional activity in today's
> world, has two very different and often
> overlooked components - the professional and
> the commercial.  The professional aspect of a
> law practice obviously involves the rendering
> of legal advice to and advocacy on behalf of
> clients for which the attorney is held to a
> certain minimum professional and ethical
> standards.  The commercial aspect involves the
> setting up and running of a business, i.e.,
> securing office space, hiring staff, paying
> bills and collecting on accounts receivable,
> etc., in which capacity the attorney acting as
> businessperson is held to the same reasonable
> person standard as any other.

*Id.* at 985.  The court held that because the attorney's act of
signing the answer and counterclaim were professional in nature
the claims based on those acts were excluded under the business
policy at issue in that case. *Id.*

Defendant Illinois National also cites *Visiting Nurse
Assoc. v. St. Paul Fire & Marine Ins.,* 65 F.3d 1097 (3d Cir.
1995).  In that case, the insured - VNA - was in the business
of providing home health care and related services. *Id.* at
1099.  AHS, a competitor of VNA, filed a complaint against VNA
claiming that VNA violated the antitrust laws, violated the
Racketeer Influenced and Corrupt Organizations Act, and
intentionally interfered with its prospective contractual
relations with home care patients. *Id.* at 1099.  AHS alleged
that hospital discharge planners were paid by VNA, improperly

steered patients to VNA and deprived patients of information about access to its services. *Id.* at 1100.   The policy at issue in that case covered claims based on events that arise out of the profession named in the coverage summary, which was "home care providers." *Id.* at 1100.   The policy further provided that the coverage protects against claims that result from professional services that were or should have been provided. *Id.*   Other than the reference to "home care providers", the term "professional services" was not expressly defined in the policy. *Id.*   The court concluded that the claims by AHS against VNA were not covered under the policy.   The court reasoned:

> For purposes of this opinion, we accept VNA's contention that discharge planning may involve professional services as that term is understood in the policy.  However, AHS has not based its suit against VNA on any aspect of the application of any specialized skills, knowledge, learning, or attainments by the discharge planners.  Even if the hospitals' discharge planners are treated as VNA's employees, VNA's liability to AHS, if any, derives from AHS's claims that VNA conspired with hospitals to monopolize referrals, engaged in a pattern of racketeering activity, and interfered with AHS's prospective contractual relations with patients.  Similar allegations could be made against any business competing for referrals or customers.  These allegations stem from VNA's effort to operate its business, not from any professional services that were or should have been provided by the discharge planners, and thus do not even potentially fall within the policy's coverage. *Cf. Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 189 Ill.Dec. 756, 762, 620 N.E.2d 1073, 1079 (1993)(no duty to defend where claims alleging that insureds "committed intentional business torts and engaged in unfair competitive practices" did not "arise or result because of the insureds' performance of

17

real estate services," the service listed in
policy's definition of "professional
services").

*Id.* at 1102.  The court contrasted the language of the policy

in that case with language in the policy in a case - *Biborosch*

*v. Transamerica Ins. Co.,* 603 A.2d 1050 (Pa. Super. Ct. 1992) -

in which the Superior Court of Pennsylvania concluded that

terminating an employee met the definition of "professional

services" in the policy at issue in that case which was issued

by Transamerica Insurance Company.  The court in *Visiting Nurse*

*Assoc.* stated:

> In contrast to the more expansive coverage
> in *Biborosch*, St. Paul merely agreed to cover
> claims "aris[ing] out of the profession named
> in the Coverage Summary" ("home care
> providers") and resulting from "professional
> services that were or should have been
> provided." App. at 11-12. Inasmuch as St. Paul,
> unlike Transamerica, did not define
> "profession" or "professional services" to
> include conduct "necessary or incidental in the
> conduct of [VNA's] business," it is not
> required to defend claims that result from
> VNA's operation of a business.  AHS's claim
> arises from VNA's competition for clients, a
> business activity, rather than from its
> provision of professional services.

*Id.* at 1103.[2]

---

[2] The defendants also cite *Hampton Medical Group, P.A.
v. Princeton Ins. Co.,* 840 A.2d 915 (N.J. Super. Ct.  2004), and
*Princeton Ins. Co. v. Kosoy,* No. 98-4985, 1999 WL 79055 (E.D. Pa.
1999).  In each of those cases, the court held that claims based on
fraudulent or inaccurate billing of insurance companies were not
covered under the professional liability policies in those cases.
However, the policies in each of those cases covered injuries
caused by a medical incident arising out of the supplying or
failure to supply professional services.  In contrast to the

**(continued...)**

Although other cases may provide guidance, "disposition in each case will depend upon the specific language of the provisions defining the coverage and exclusions of a particular policy." *Visiting Nurse Assoc*, *supra.,* 65 F.3d at 1102.

The Policy in this case defines "Professional Services" to mean "[p]erformance as a "Debt Collector."[3]  The policy defines "Debt Collector" to mean "any person who uses any instrumentality of interstate commerce or the mails in the collection or attempted collection of "Debt."  "Debt" is defined as "any obligation or alleged obligation of a "Consumer" to pay money."  The policy also provides that "Debt" includes those obligations which are the subject of billing services provided to "Clients or Customers" for a fee."  The policy provides coverage only for claims based on wrongful acts of the insured committed solely in the conduct of the insured's professional services.

---

[2](...continued)
policies in those cases, the policy in the instant case contains no requirement that the injury underlying the claim arise out of a medical incident.

[3]  The policy also defines "Professional Services" to mean "Dissemination of "Consumer Reports" or "Credit Information" as a "Credit Bureau" or "Performance of "Check Verification/ Recovery Services" as a "Check Verification/Recovery Office". Neither of these two prongs of the definition are implicated by Forward Thinking's complaint or amended complaint against the plaintiffs.

We agree with defendant Illinois National that the
claims against the plaintiffs made by Forward Thinking relating
to billing disputes do not fall with the coverage of the
policy.   The plaintiffs contend that the rendering of debt
collection services is inextricably intertwined with the amount
of money that is returned to the client and the amount of money
that the debt collector retains in compensation.   The
plaintiffs state that debt collectors do not have a separate
billing function for their clients; but rather they receive a
portion of what they successfully collect from the debtors.
Even though debt collectors' compensation may be tied to the
amount of money they collect, their billing for their services
is still a business function.   "As in most other businesses,
the bill is an effect of the service provided, not part of the
service itself." *Medical Records Associates, Inc. v. American
Empire Surplus Lines Ins. Co.,* 142 F.3d 512, 516 (1st Cir.
1998)(relating to the business of medical records processing).
Setting a price for services and sending bills are functions of
every business. *Id.* at 517.   We conclude that the claims of
Forward Thinking that relate to the plaintiffs' billing for
their services are not claims based on acts of the plaintiffs
committed solely in the conduct of the plaintiffs' professional
services.

Although we agree with defendant Illinois National that
the claims against the plaintiffs made by Forward Thinking

20

relating to billing disputes do not fall with the coverage of the policy, we do not agree with defendant Illinois National that all of the claims made by Forward Thinking relate to the plaintiffs' billing practices.

Forward Thinking alleges in its original complaint against NRA that it was in the business of acting as a consulting firm offering services in call center operations, credit and collections, customer billing, strategic planning, and second placement collections. *Doc. 1, Exhibit B at Count I, ¶2.* Forward Thinking alleges that it had a consulting relationship with Southern New England Telephone (SNET) whereby SNET routinely sent it delinquent customer accounts for collections and second placement collection services. *Id.* at ¶4.  Forward Thinking alleges that it entered into a contract with plaintiff NRA whereby it was to generate collection business from the utility industry and place that collection business with NRA for primary handling.  *Id.* at ¶¶ 5-6.  Forward Thinking sets forth the terms of the contract relating to how much NRA was to be paid for its services. *Id.* at ¶6.  The amount of compensation NRA was to receive depended on whether the debtor responded to the initial written payment demand and whether Forward Thinking authorized NRA to begin an outbound telephone collection campaign with regard to that debtor. *Id.* at ¶6. Forward Thinking alleges that it referred SNET delinquent accounts to NRA pursuant to its contract with NRA. *Id.* at ¶8.

Forward Thinking alleges that in breach of its contract NRA began to reclassify accounts and that such reclassification represented both unauthorized and undisclosed overbilling and unauthorized and undisclosed double billing.  *Id.* at ¶10.

We conclude that Counts 1 through 3 of Forward Thinking's original complaint against NRA relate to NRA's billing practices and as such are not covered by the policy in this case.  However, it is not clear that Count 4 of Forward Thinking's original complaint is confined to billing practices. In addition to the allegations set forth above, in Count 4 Forward Thinking alleges that "NRA was also responsible for other overbilling and the mishandling of accounts with regard to the SNET accounts and also with regard to accounts from Public Service Electric and Gas referred to NRA by Forward Thinking." *Doc. 1, Exhibit B at Count IV, ¶2.*  In Count 4 Forward Thinking alleges that it "has been damaged as the result of this overbilling and mishandling of accounts." *Id.* at ¶3.

It is clear that Count 4 relates in part to NRA's billing practices.  However, given that Count 4 also alleges "mishandling of accounts," it is not clear that Count 4 is limited to billing practices.

"Mishandling of accounts" is rather vague language. However, under Pennsylvania law the duty to defend arises whenever the underlying complaint may potentially come within the insurance coverage, *Frog, Switch, supra,* 193 F.3d at 746, any doubts regarding the insurer's duty to defend must be resolved in favor of the insured, *Western World Ins. Co., supra,* 892 F.Supp. at 662, and the insurer is obligated to defend an action unless and until the insurer can confine the claim to a recovery outside the bounds of coverage, *Id.* We can not say that Forward Thinking's claim for "mishandling of accounts" concerns only NRA's billing practices.  Accordingly, we cannot say that that claim does not come under the coverage of the policy.  Thus, defendant Illinois National had a duty to defend plaintiff NRA until such time as it were to have become clear that there was no possibility that Forward Thinking could recover on that claim.

In its amended complaint, Forward Thinking basically repeats and elaborates on the allegations it made in its original complaint.  In addition to NRA, in its amended complaint Forward Thinking names as defendants DBS, Kusic and Brumbach.  Forward Thinking's amended complaint contains Eighteen counts.

We conclude that all of the counts, with the exception of counts 5, 10, 15 & 16, of Forward Thinking's amended complaint

against NRA relate to the plaintiffs' billing practices and as such are not covered by the policy in this case.

In Count 10 of its amended complaint, Forward Thinking alleges that NRA wrongfully terminated its relationship with Forward Thinking.  As is billing, terminating a contractual relationship is a business decision and is not a rendering of professional services.  Accordingly, the claim in Count 10 of the amended complaint is not covered by the policy in this case.

In Count Five of its amended complaint, Forward Thinking alleges that NRA failed to properly credit the full amount of the gross collections on payments which were received on $2.00 letter collection accounts which were wrongfully moved on August 17, 1999 and that it suffered damages.  In Count Fifteen of its amended complaint, Forward Thinking alleges that NRA failed to properly post certain payments made by debtors to PSE&G and that this resulted in a loss of commissions to Forward Thinking.  In Count 16 of its amended complaint, Forward Thinking alleges that PSE&G cancelled its contract with Forward Thinking as the result of the conduct of NRA and that as a result Forward Thinking lost significant commissions and revenue.   Counts 5, 15 and 16 of Forward Thinking's amended complaint do not seem to concern only billing practices. Rather, these counts address at least in part how the

plaintiffs posted debtor payments to accounts.  These
allegations potentially concern more that just billing.  We can
not say that the claims in Counts 5, 15 and 16 of Forward
Thinking's amended complaint do not come under the coverage of
the policy, and, accordingly, we can not say that Illinois
National does not have a duty to defend the plaintiffs.

2. Contract Claims and the Gist of the Action
Doctrine.

Defendant Illinois National contends that the plaintiffs'
claims arise out of a contract, that the policy covers only
negligent acts, errors and omissions, and that contract claims
do not sound in negligence.  To the extent that defendant
Illinois National is contending that a breach of contact caused
by a negligent act can not fall within the definition of
"negligent act, error or omission" in a professional liability
policy, the defendant is incorrect. *See Cadwallader v. New
Amsterdam Casualty Co.,* 152 A.2d 484, 488 (Pa. 1959)(stating
that a cause of action based on an attorney's breach of an
agreement to withhold a certain sum from a condemnation award
would be within the coverage of the attorney's professional
liability policy - which covered claims arising out the
attorney's performance of professional services and caused by
any "negligent act, error or omission" of the attorney - "if
the violation of this agreement was due to a negligent act,
error or omission.").

25

Defendant Illinois National also argues that under the
gist of the action doctrine Forward Thinking's claims sound in
contract and not tort and, therefore, are not covered under the
policy.

"The gist of the action doctrine is designed to maintain
the conceptual distinction between breach of contract claims
and tort claims." *The Brickman Group, Ltd. v. CGU Ins. Co.,* 865
A.2d 918, 927 (Pa.Super.Ct. 2004).  "As a practical matter, the
doctrine precludes plaintiffs from re-casting ordinary breach
of contract claims into tort claims." *Etoll, Inc. v.
Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (2002).  It is
possible that a breach of contract can give rise to an
actionable tort. *The Brickman Group, supra,* 865 A.2d at 927.
However, to be construed as a tort the wrong ascribed to the
defendant must be the gist of the action with the contract
being collateral. *Id.*  "The important difference between
contract and tort actions is that the latter lie from the
breach of duties imposed as a matter of social policy while the
former lie for the breach of duties imposed by mutual
consensus." *Id.*  "In other words, a claim should be limited to
a contract claim when the parties' obligations are defined by
the terms of the contracts and not by the larger social
policies embodied by the law of torts." *Id.*

Defendant Illinois National cites *Phico Ins. Co. v. Presbyterian Med. Services Corp.,* 663 A.2d 753 (Pa.Super.Ct. 1995), in support of its argument that the court should analyze Forward Thinking's claims under the gist of the action doctrine, conclude that the gist of its claims is breach of contract and not tort, and that, therefore, the claims are not covered under the policy. *Phico* is distinguishable in that the policy in that case was a comprehensive liability policy which contained an explicit exclusion excluding from coverage, with certain exceptions, claims arising in connection with the breach of oral or written agreements. Defendant Illinois National has not pointed to a exclusion in the policy in this case excluding contract claims from coverage. Thus, even if under the gist of the action doctrine all of Forward Thinking claims were construed to be contractual claims those claims would not necessarily not be covered under the policy. As stated above a breach of contract caused by a negligent act can fall within the definition of "negligent act, error or omission" in a professional liability policy. *Cadwallader, supra,* 152 A.2d at 488.

3. Exclusion M.

Defendant Illinois National contends that Forward Thinking's claims against the plaintiffs are excluded from coverage by Exclusion M of the policy.

27

Exclusion M provides that the policy does not apply to claims "[s]eeking the return of fees or charges for services performed by any 'Insured.'"

Since we have determined that only count 4 of Forward Thinking's original complaint and counts 5, 15 and 16 of Forward Thinking's amended complaint are possibly within the coverage of the policy, we will consider only whether the claims in those counts are excluded from coverage by Exclusion M.

In count 4 of its original complaint and in counts 5, 15 and 16 of its amended complaint, Forward Thinking demands judgment "in an amount that will compensate it for its damages, together with interest, reasonable attorney's fees and costs of suit." It is not clear that Forward Thinking is in Counts 4, 5, 15 and 16 seeking only the return of fees or charges for services performed by the plaintiffs.

"If some of the relief sought in the third-party complaint falls within the terms of coverage, the insurer is obliged to defend the entire claim even if other claims for relief are excluded from coverage." *Covington Twp. v. Pacific Employers Ins. Co.,* 639 F.Supp. 793, 798 (M.D. Pa. 1986). Since it is not clear that Forward Thinking is seeking only the return of fees or charges for services performed by the plaintiffs,

defendant Illinois National is not entitled to judgment on the
pleadings on the basis of Exclusion M of the policy.[4]

4. Indemnification.

Defendant Illinois National contends that the plaintiffs'
claim for indemnification must be dismissed as premature
because the Forward Thinking litigation has yet to be resolved.
The plaintiffs do not assert that their claim for
indemnification would not be premature if the Forward Thinking
litigation has not been resolved.  However, the plaintiffs
state that there are no facts of record establishing that the
Forward Thinking case not been completed through trial or
settlement.

Since it is not of record whether the Forward Thinking
litigation has been completed, we will deny defendant Illinois

_____

[4] We note that in a footnote in its opening brief
defendant Illinois National states that, to the extent that the
Forward Thinking Amended Complaint alleges that the plaintiffs
failed to remit or collect funds, claims arising out of those acts
are specifically excluded from coverage under the policy.  The
defendant cites Exclusion G to the policy which provides that the
"policy does not apply to . . . The actual or alleged . . . failure
to remit or collect funds . . . ."  We do not address this argument
in connection with the instant motion for judgment on the pleadings
as it was raised only in a footnote.  *John Wyeth & Brother Ltd. v.
Cigna International Corp.,* 119 F.3d 1070, 1076 n.6 (3d Cir.
1997)(arguments raised in passing such as in a footnote but not
squarely argued are considered waived).

National's motion for judgment on the pleadings on the indemnification claim.

Based on the foregoing discussion, defendant Illinois National is not entitled to judgment on the pleadings on the plaintiffs claim for breach of contract or on the plaintiffs' claim for a declaratory judgment.

    5. Bad Faith.

Pennsylvania's Bad Faith Statute, 42 Pa.C.S.A. § 8371, provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

"Bad faith" is not defined in the statute.  The Pennsylvania Superior Court has defined "bad faith" as "'any frivolous or unfounded refusal to pay proceeds of a policy.'" *Terletsky v. Prudential Property and Cas. Ins. Co.*, 649 A.2d 680, 688 (1994)(quoting *Black's Law Dictionary* 139 (6th ed. 1990)).  "To make out a claim of bad faith, a plaintiff must

show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim." *W.V. Realty, Inc. V. Northern Ins. Co.,* 334 F.3d 306, 312 (3d Cir. 2003).

Defendant Illinois National contends that the plaintiffs' bad faith claim must be dismissed because it properly denied coverage under the policy and because it had a reasonable basis for denying coverage.

As discussed above, some of Forward Thinking's claims against the plaintiffs could possibly fall within the coverage of the policy and, at this point, defendant Illinois National has not shown that those claims were excluded from coverage by an exclusion in the policy.  Accordingly, at this point, defendant Illinois National is not entitled to judgment on the pleadings on the plaintiffs' bad faith claim.

6. Fraud.

Count IV of the complaint is a claim for fraudulent misrepresentation.

Under Pennsylvania law, the elements of intentional misrepresentation are: 1) a representation; 2) which is

material to the transaction at hand; 3) made falsely, with
knowledge of its falsity or recklessness as to whether it is
true or false; 4) with intent of misleading another into
relying on it; 5)justifiable reliance on the misrepresentation;
and 6) resulting injury proximately caused by the reliance.
*Bortx v. Noon*, 729 A.2d 555, 560 (Pa. 1999).

Defendant Illinois National contends that the plaintiffs'
fraud claims should be dismissed because the plaintiffs have
failed to allege an actionable misrepresentation, because the
"gist of the action" doctrine bars their fraud claims, and
because they have not pleaded fraud with particularity.

The plaintiffs allege the following with respect to their
fraudulent misrepresentation claim.  At the time the plaintiffs
purchased or renewed the policy, and for a considerable period
of time prior thereto, the defendants had an undeviating policy
of attempting to deny coverage and of attempting to deny a
defense for large policy claims regardless of the merits of the
particular underlying case. *Complaint at ¶163.*  Further, it is
alleged, in promulgating and pursuing this policy the
defendants willfully and knowingly subjected many of its
insured, including the plaintiffs, to a substantial risk that
they would be forced at considerable expense to obtain and
manage the defense of their own litigation. *Id.* at ¶164.  The
defendants fraudulently misrepresented that they would pay

valid claims under their policies. *Id.* at ¶165.  The defendants deceptively stated the treatment their insureds would receive with respect to investigation of claims and the defense and indemnification thereof. *Id.* at ¶166.  The defendants deceptively induced the plaintiffs to purchase a policy by promises that the defendants had made regarding their insurance practices with no intention of performing them. *Id.* at ¶167.  The defendants ultimately made a false misrepresentation regarding the application of exclusions under the policy. *Id.* at ¶168.  The defendants knew that these representations were false or they were reckless as to whether the representations were true or false. *Id.* at ¶169.  The defendants made the representations with the intent of misleading the plaintiffs into relying on the misrepresentations. *Id.* at ¶170.  The plaintiffs justifiably relied on the defendants' misrepresentations and were damaged by that reliance. *Id.* at ¶¶171-172.

The plaintiffs are alleging fraud both in connection with statements made by the defendants before the plaintiffs purchased the policy and with regard to statements the defendants made regarding applications of exclusions to the policy.

As to the plaintiffs' allegations regarding statements made by the defendants before the plaintiffs purchased or

renewed the policy, we conclude that the plaintiffs have failed to plead fraud with particularity as required by Fed.R.Civ.P. 9(b).

Federal Rule of Civil Procedure 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other conditions of mind a person may be averred generally."  The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which a defendant is charged in order to give the defendant an opportunity to respond meaningfully and to prevent false or unsubstantiated charges. *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998).  To satisfy Rule 9(b), the plaintiffs must plead with particularity the "circumstances" of the alleged fraud. *Id.*  "They need not, however, plead the 'date, place or time' of the fraud so long as they use an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Id.* (quoting *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984)).

As to the allegations regarding statements made by the defendants before the plaintiffs purchased or renewed the policy, the plaintiffs have not pled with particularity the circumstances of those alleged statements.  The plaintiffs have

not alleged who (either by name or by company and position) made the statements, to whom in the plaintiffs' companies those statements were made, or the context in which those statements were made.  Moreover, the plaintiffs have not precisely identified those statements.  Accordingly, we conclude that the plaintiffs have failed to plead with particularity their fraud claim with respect to statements made before the plaintiffs purchased or renewed the policy.

The plaintiffs have requested leave to file an amended complaint if the court concludes that they have not properly pleaded their fraud claims.  We will grant the plaintiffs twenty days to file an amended complaint pleading with particularity their fraud claim based on statements made by the defendants before the plaintiffs purchased or renewed the policy.  Any amended complaint shall be complete in all respects.  It shall be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed.

As to the alleged statements made by the defendants regarding application of exclusions to the policy, the plaintiffs' reference is to the statements made in the letters of November 9, 2000 and October 1, 2004 denying coverage. Those letters set forth Illinois National's reasons for denying coverage and a defense.  The plaintiffs' fraud claim with

respect to those statements is a claim of fraud in the
performance of the contract.   We conclude that as to those
statements the plaintiffs' fraud claim is barred by the gist of
the action doctrine. See *Etoll, Inc. v. Elias/Savion
Advertising, Inc.*, 811 A.2d 10, 20 (Pa.Super.Ct. 2002)(holding
that the gist of the action doctrine applies to claims for
fraud in the performance of a contract).[5]  We will grant
defendant Illinois National judgment on the pleadings as to the
plaintiffs' fraud claim based on statements made by the
defendants regarding application of exclusions to the policy.

     F. AIG and AIGTS' Motion for Judgment on the Pleadings.

     In their motion for judgment on the pleadings, defendants
AIG and AIGTS adopt the position and reasoning of defendant
Illinois National in its motion for judgment on the pleadings.
For the reasons discussed above, we will grant defendants AIG
and AIGTS judgment on the pleadings on the plaintiffs' fraud
claim based on statements regarding application of exclusions
to the policy.  Further, the plaintiffs' fraud claim against
defendants AIG and AIGTS based on statements made before the

---

     [5] The plaintiffs correctly state that the
Pennsylvania Supreme Court has not adopted the gist of the
action doctrine.  However, we rely on *Etoll, supra,* as a
reliable prediction that the Pennsylvania Supreme Court, if
faced with the issue, would adopt the gist of the action
doctrine and would conclude that fraud claims made based on
the performance of a contract are barred by that doctrine.

plaintiffs purchased or renewed the policy will be dismissed because the plaintiffs have failed to plead fraud with particularity.  The plaintiffs will be permitted to file a fraud claim in an amended complaint as to defendants AIG and AIGTS.

Defendants AIG and AIGTS contend that they are not parties to the policy and that therefore the plaintiffs' declaratory judgment claim and breach of contract claim should be dismissed against them.  Defendants AIG and AIGTS further contend that they did not issue the insurance policy that forms the basis of the plaintiffs' bad faith claim and that therefore they are not insurers for purposes of Pennsylvania's Bad Faith Statute.

The plaintiffs allege the following in their complaint with regard to defendants AIG and AIGTS.  AIG is a Delaware corporation authorized to do business in Pennsylvania. *Complaint at ¶4.*  AIG is an international insurance and financial services organization. *Id.*  AIGTS is a Delaware Corporation authorized to do business in Pennsylvania with its principal place of business in New York. *Id.* at ¶3.  AIGTS is a member company of AIG and is engaged in the business of claims and litigation management services in various insurances lines, including professional liability. *Id.*  Illinois National is a member company or division of AIG. *Id.* at ¶5.

AIG and Illinois National are qualified/authorized to transact business as an insurer within Pennsylvania and regularly engage in the sale of insurance in Pennsylvania. *Id.* at ¶6.  AIG and Illinois National had AIGTS act as their agent or ostensible agent in managing and handling all claims relevant to the policy in this case. *Id.* at ¶7.  All defendants had an interest in or are parties to the policy in this case. *Id.* at ¶8.  AIG and Illinois National are vicariously liable for the actions of AIGTS. *Id.* at ¶9.

On or about November 13, 2000, plaintiff NRA received a letter dated September 9, 2000 from John P. Favilla, a claims analyst of AIGTS, stating that Illinois National would neither defend nor indemnify NRA. *Id.* at ¶98.  Illinois National and AIG, through Favilla and AIGTS, wrongfully denied a defense and coverage to NRA. *Id.* at ¶112.  After receipt of Forward Thinking's amended complaint, NRA again notified its insurer of the claim by writing a letter to Favilla of AIGTS requesting a defense and coverage. *Id.* at ¶114.  In October of 2004, NRA received a letter dated October 1, 2204 from Lisa Porcaro, a claims analyst of AIGTS, stating that Illinois National would not provide coverage for the Forward Thinking claims. *Id.* at ¶115.  The conduct of Illinois National, AIGTS and AIG, Favilla and Porcaro constitutes bad faith insurance practices. *Id.* at ¶134.

The plaintiffs contend that AIG and AIGTS should remain as defendants on the declaratory judgment and breach of contract and bad faith claims because they lack sufficient information regarding the interrelationship of AIG, AIGTS and Illinois National.  The plaintiffs state that they lack the information necessary to determine whether one of the corporations is the parent or subsidiary of another or whether an attempt to pierce the corporate veil is appropriate.

Defendants AIG and AIGTS respond that the plaintiffs have failed to allege any factual basis in support of their declaratory judgment, breach of contract or bad faith claims against them.  Defendants AIG and AIGTS contend that "discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." *Zuk v. Eastern PA Psychiatric Institute,* 103 F.3d 294, 299 (3d Cir. 1996)(citing Advisory Committee Notes to the 1993 amendments to Fed.R.Civ.P. 11). *See also DM Research v. College of American Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)(stating that a complaint need not contain evidentiary detail but that "the price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome.").

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Complaints 'need not plead law or match facts to every element of a legal theory.'" *Weston v. Pennsylvania*, 251 F.3d 420, 429 (3d Cir. 2001)(quoting *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C.Cir. 2000)).  "[A] plaintiff generally need not explicitly allege the existence of every element in a cause of action if fair notice of the transaction is given and the complaint sets forth the material points necessary to sustain recovery." *Menkowitz v. Pottstown Memorial Medical Center*, 154 F.3d 113, 124 (3d Cir. 1998).  The statement required by Rule 8(a)(2) "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.*

Considering the plaintiffs' complaint under the simplified notice pleading standard, we nevertheless conclude that the complaint fails to state a claim for a declaratory judgment, a claim for a breach of contract or a claim of bad faith against defendants AIG and AIGTS upon which relief may be granted.

The policy that forms that basis of the plaintiffs'
declaratory judgment claim and breach of contract and bad faith
claims was issued by Illinois National.  Neither AIG nor AIGTS
are signatories on that policy.

The fact that AIGTS was the agent of Illinois National
does not provide a basis for holding AIGTS liable for breach of
the policy issued by Illinois National. *See Hudock v. Donegal
Mutual Ins. Co.,* 264 A.2d 668, 672 (Pa. 1970).  The plaintiffs
do not allege that AIGTS was an insurer within the meaning of
Pennsylvania's bad faith statute. *See Margaret Auto Body, Inc.
v. Universal Underwriters Group,* 2003 WL 1848560 at *1
(Phila.C.C.P. Jan. 10, 2003)(noting that the bad faith statute
does not contain a definition of insurer but that it is
generally recognized that an insurer issues policies, collects
premiums and in exchange assumes certain risks and contractual
obligations).  Also, the "mere ownership of a subsidiary does
not justify the imposition of liability on the parent." *Pearson
v. Component Technology Corp.*, 247 F.3d 471, 484 (3d Cir.
2001).  Thus, the plaintiffs' allegations that AIGTS and
Illinois National are member companies of AIG does not provide
a basis for holding AIG liable on the policy issued by Illinois
National.  The plaintiffs have not alleged that Illinois
National was an agent of either AIG or AIGTS.  Nor have the
plaintiffs alleged that AIG and AIGTS are alter egos of
Illinois National or any other basis for disregarding the

41

separate corporate identities of the defendants.  Accordingly, we conclude that the complaint does not provide fair notice of the grounds upon which the plaintiffs' declaratory judgment, breach of contract and bad faith claims against AIG and AIGTS rest.  Accordingly, we will dismiss those claims against AIG and AIGTS.  However, the plaintiff will be permitted to file an amended complaint to plead, if appropriate, claims against AIG and AIGTS and the grounds upon which the plaintiffs are seeking to hold AIG and AIGTS liable.

IV. Order.

   **IT IS ORDERED** that the defendants' motion (doc. 36) for reconsideration is **GRANTED** and, as set forth in this Memorandum and Order, the court has reconsidered the defendants' motions for judgment on the pleadings.  **IT IS ORDERED** that defendant Illinois National's motion (doc. 23) for judgment on the pleadings is **GRANTED IN PART AND DENIED IN PART**.  Defendant Illinois National is **GRANTED** judgment on the pleadings on the plaintiffs' fraud claim based on statements regarding application of exclusions to the policy.   The plaintiffs' fraud claim against defendant Illinois National based on statements made before the plaintiffs purchased or renewed the policy is dismissed because the plaintiffs failed to plead fraud with particularity.  Defendant Illinois National's motion for judgment on the pleadings is otherwise **DENIED.  IT IS**

**ORDERED** that defendants AIG and AIGTS' motion (doc. 21) for judgment on the pleadings is **GRANTED**.  The plaintiffs' declaratory judgment, breach of contract and bad faith claims against defendants AIG and AIGTS are dismissed.  Defendants AIG and AIGTS are **GRANTED** judgment on the pleadings on the plaintiffs' fraud claim based on statements regarding application of exclusions to the policy.  The plaintiffs' fraud claim against defendants AIG and AIGTS based on statements made before the plaintiffs purchased or renewed the policy is dismissed because the plaintiffs failed to plead fraud with particularity.  **IT IS FURTHER ORDERED** that the plaintiffs are granted leave to amend their complaint and that any amended complaint shall be filed with twenty days of the date of this Order.  The Clerk of Court shall delay entering judgment until the conclusion of the entire case.

/s/ J. Andrew Smyser
J. Andrew Smyser
Magistrate Judge

Dated: August 26, 2005.