UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NATIONAL RECOVERY AGENCY, INC.    :    CIVIL NO. **4:05-CV-0033**
and DIVERSIFIED BILLING           :
SERVICES, INC.,                   :
                                  :
              Plaintiffs          :    (Magistrate Judge Smyser)
                                  :
        v.                        :
                                  :
AIG DOMESTIC CLAIMS, INC.,        :
and ILLINOIS NATIONAL             :
INSURANCE COMPANY,                :
                                  :
              Defendants          :


**MEMORANDUM AND ORDER**


I. Background and Procedural History.

        The plaintiffs, National Recovery Agency, Inc. (NRA)

and Diversified Billing Services, Inc. (DBS), commenced this

action by filing a complaint on January 6, 2005.  On September

30, 2005, the plaintiffs filed an amended complaint.  The

defendants named in the amended complaint are AIG Technical

Services, Inc. (AIGTS) and Illinois National Insurance Company

(Illinois National).[1]

_____

        [1] Although the caption of the amended complaint lists
American International Group, Inc. as a defendant, none of the
counts in the amended complaint are directed against American
International Group, Inc.

The amended complaint contains three counts.  In Count I, the plaintiffs are seeking a declaratory judgment that, pursuant to an insurance policy issued by defendant Illinois National, Illinois National must provide the plaintiffs a defense in a case filed against them by Forward Thinking, Inc. (Forward Thinking) in New Jersey Superior Court as well as a declaratory judgment that defendant Illinois National must indemnify them for the claims of Forward Thinking.  In Count II, the plaintiffs are seeking damages on a claim that defendant Illinois National breached the insurance contract by failing to provide them a defense or indemnification in the case filed by Forward Thinking.  In Count III, the plaintiffs claim that defendants Illinois National and AIGTS acted in bad faith in violation of 42 Pa.C.S.A. § 8371 and Pennsylvania common law by failing to provide them a defense or indemnification in the case filed by Forward Thinking.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).  The case is scheduled for trial in July of 2006.

On October 20, 2005, the defendants filed an answer to the amended complaint.

By an Order dated November 22, 2006, the plaintiffs' claim in Count I of the amended complaint seeking a declaratory

judgment that Illinois National must indemnify the plaintiffs
for the claims of Forward Thinking, the plaintiffs' claim in
Count II for damages against defendant Illinois National for
breach of the insurance contract based on a failure to
indemnify the plaintiffs from the claims of Forward Thinking,
and the plaintiffs' claim in Count III for damages against
defendants Illinois National and AIGTS for a bad faith failure
to indemnify the plaintiffs in the case filed by Forward
Thinking were dismissed because those claims were not ripe.

By an Order dated February 22, 2006, based on a motion
filed by the plaintiffs and concurred in by the defendants, AIG
Domestic Claims, Inc. (AIGDC) was substituted as a defendant
for AIGTS and the caption of the case was amended accordingly.

There are currently three motions pending: 1) the
defendants' motion for leave to amend their answer to the
amended complaint; 2) the defendants' motion for partial
summary judgment; and 3) the plaintiffs' motion for partial
summary judgment.

II.  Defendants' Motion for Leave to Amend their Answer.

On October 20, 2005, the defendants filed an answer to
the amended complaint.  On February 24, 2006, the defendants

filed a motion for leave to amend their answer to the amended
complaint.  The defendants are seeking leave to amend their
answer to plead the statute of limitations as a defense to the
plaintiffs' bad faith claims.

The statute of limitations is an affirmative defense,
and therefore under Fed.R.Civ.P. 8(c) it should be asserted in
the answer.  However, the failure to plead an affirmative
defense in the answer does not automatically result in a
waiver. *Eddy v. Virgin Islands Water & Power Auth.,* 256 F.3d
204, 209 (3d Cir. 2001).  Under Fed.R.Civ.P. 15(a), an answer
may be amended at any time by leave of court to include an
affirmative defense. *Id.*

Rule 15(a) of the Federal Rules of Civil Procedure
provides that leave to amend a pleading "shall be freely given
when justice so requires."  Fed.R.Civ.P. 15(a).  "[M]otions to
amend pleadings should be liberally granted," *Long v. Wilson,*
393 F.3d 390, 400 (3d Cir. 2004), and "[l]eave to amend must
generally be granted unless equitable considerations render it
otherwise unjust," *Arthur v. Maersk, Inc.,* 434 F.3d 196, 204
(3d Cir. 2006).  "The liberal right to amend extends to an
answer to the complaint." *Long, supra,* 393 F.3d at 400.  "Among
the factors the may justify denial of leave to amend are undue
delay, bad faith, and futility." *Arthur, supra,* 434 F.3d at
204.  However, in this Circuit prejudice to the non-moving

4

party is the touchstone for denial of leave to amend. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).  "Unless the opposing party will be prejudiced, leave to amend should generally be allowed." *Charpentier v. Godsil,* 937 F.3d 859, 864 (3d Cir. 1991).

The plaintiffs contend that they will suffer substantial prejudice if the defendants are granted leave to amend their answer to raise the statute of limitations defense. The plaintiffs assert that they have expended substantial time, effort, and expense inquiring into the defendants' alleged bad faith insurance practices including the expense of obtaining an expert report.  They also assert that they would be substantially prejudiced if the focus of the litigation were allowed to shift at this late date to the defendants' statute of limitations defense.

"The passage of time factors into the analysis of whether a plaintiff has suffered prejudice by a delay in amending an answer to assert an affirmative defense." *Long, supra,* 393 F.3d at 399.  However, "[d]elay alone is not sufficient to justify denial of leave to amend." *Arthur, supra,* 434 F.3d at 204.  But at some point "delay will become 'undue,' placing an unwarranted burden on the court... [and] an unfair burden on the opposing party." *Id.*  The longer the unexplained delay, the less the plaintiff must show in terms of prejudice.

*Long, supra,* 393 F.3d at 400.   In determining what constitutes prejudice, the court should consider whether the assertion of the new defense would: 1) require the plaintiff to expend significant additional resources to conduct discovery and prepare for trial; 2) significantly delay the resolution of the dispute; or 3) prevent the plaintiff from bringing a timely action in another jurisdiction. *Id.*

We conclude that the plaintiffs have not established that they will be substantially prejudiced if the defendants' motion for leave to amend is granted.   The fact that the plaintiffs' bad faith claims may be determined to be barred by the statute of limitations does not amount to prejudice sufficient to defeat an amendment. *Long, supra,* 393 F.3d at 399 ("The frustrated expectation of not having an untimely habeas petition heard on the merits does not establish prejudice sufficient to defeat an amendment to an answer.").   Nor is the time, effort, and money that the plaintiff expended in litigating their case to this point substantial prejudice. *See Block v. First Blood Associates,* 988 F.2d 344, 351 (2nd Cir. 1993)(holding that district court did not abuse its discretion in granting defendants leave to amend their answer to raise statute of limitations defense and concluding that the time, effort, and money expended by the plaintiffs in litigating the case did not arise to substantial prejudice).

6

The statute of limitations defense in this case raises questions of law and questions of application of the law to facts which are not in dispute.  The plaintiffs have not asserted that they need to conduct additional discovery to respond to the statute of limitations defense.

Allowing the defendants to amend their answer to plead the statute of limitations will not delay the resolution of this case.  The parties have fully briefed the statute of limitations defense in connection with the defendants' motion for partial summary judgment.  If the court grants leave to amend, it can decide the statute of limitations defense without delaying the trial.

The plaintiffs have not argued that the defendants' delay in raising the statute of limitations defense has prevented them from bringing a timely action in another jurisdiction.  The plaintiffs' bad faith claims would be subject to the same statute of limitations if the plaintiff had brought those claims in state court.

Although prejudice is the touchstone of the inquiry whether to allow amendment, other factors such as undue delay, bad faith, and futility may justify denial of leave to amend. *Arthur, supra,* 434 F.3d at 204.

There is no evidence that the defendants acted in bad faith or with a dilatory motive in failing to raise the statute of limitations at an earlier point.  It does not appear that the defendants had any strategic reason to delay raising the statute of limitations defense in this case.  The plaintiff has not argued that allowing the amendment would be futile.  Thus the only remaining factor to consider is whether leave to amend should be denied because of undue delay.

The plaintiffs contend that the defendants have unduly delayed in raising the statute of limitations defense and have not provided an adequate justification for their delay.  The plaintiffs point out that the defendants knew the dates they denied the requests for coverage from the beginning of this case and, thus, they could and should have raised the statute of limitations defense earlier.

Although we agree with the plaintiffs that the defendants should have raised the statute of limitations defense earlier, we can not conclude that the defendants' delay amounted to undue delay justifying denial of leave to amend.

"There is, of course, no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue.'" *Arthur, supra,* 434 F.3d at 205.  Whether

delay is undue depends on the facts and circumstance of the
case.

The defendants filed their answer to the amended
complaint on October 20, 2005.  On February 24, 2006, they
filed their motion for leave to amend their answer.  The delay
involved was only about four months.

Four months does not amount to undue delay in the
absence of prejudice to the other party. *See Long, supra,* 393
F.3d at (holding that raising statute of limitations defense in
habeas corpus case 14 months after petition filed not a reason
to deny leave to amend the answer).  *See also Arthur, supra,*
434 F.3d at 205 (holding that eleven month delay in amending
complaint not so egregious as to warrant refusal of leave to
amend and noting that its research uncovered only one appellate
case which has approved denial of leave to amend based on a
delay of less than one year).

Even assuming that we should measure the delay from the
date (March 1, 2005) that the defendants filed their answer to
the original complaint, the delay involved was less than a year
and, in the absence of prejudice, does not amount to undue
delay justifying denial of leave to amend.

The plaintiffs contend that the defendants have not proffered an adequate justification for their delay in raising the statute of limitations.  The defendants in explaining their delay merely state that "[b]ecause defense counsel up to that time [the time of filing their answer to the amended complaint] had focused principally on the question of whether coverage for Plaintiffs' claims existed and, by extension, Plaintiffs' breach of contract claims, a statute of limitations defense was not pleaded with respect to the bad faith claim." *Doc. 74 at 2.* The delay in this case appears to have resulted from the neglect of defense counsel.

Although that defendants have not supplied a compelling reason for their delay, in the absence of prejudice to the plaintiffs they are not required to do so. *Long, supra,* 393 F.3d at 401.  To require the defendants to supply a compelling reason for their delay in the absence of prejudice to the plaintiffs "would certainly run counter to the well-established rule that amendments should be liberally allowed." *Id.*  "The liberality of Rule 15(a) counsels in favor of amendment even when a party has been less than perfect in the preparation and presentation of a case." *Arthur, supra,* 434 F.3d at 206.  "It allows for misunderstandings and good-faith lapses in judgment, so long as the party thereafter acts reasonably and diligently." *Id.*

10

The defendants most certainly should have exercised greater diligence in raising the statute of limitations. Nevertheless, "[l]awyers - who, like judges, operate under the pressures of time and demanding schedules - sometimes, however, fall short of perfection." *Kiser v. General Elec. Corp.,* 831 F.2d 423, 428 (3d Cir. 1987). "Recognizing this fact of legal life, Rule 15(a) was enacted to create an uncomplicated method by which pleadings may be amended without causing serious injustice." *Id.*

Given that there is no evidence of bad faith on the part of the defendants in failing to plead the statute of limitations as an affirmative defense in their answer to the amended complaint, that it would not be futile to allow the defendants to amend their answer, and, most importantly, that the plaintiffs will not be substantially prejudiced by allowing an amendment, we conclude that the defendants' delay in raising the statute of limitations does not justify denying the defendants leave to amend their answer.  Accordingly, the defendants' motion for leave to amend will be granted.

III.  Motions for Partial Summary Judgment.

Both the defendants and the plaintiffs have filed a motion for partial summary judgment.

11

A.   Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 580 (3d Cir.  2003).  In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to

determine whether there is a genuine issue for trial." *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

     B.   Defendants' Motion for Partial Summary Judgment.

     The defendants are seeking summary judgment on the bad faith claims in Count III of the amended complaint.   The defendants contend that the statutory bad faith claim is barred by the statute of limitations, that they should be granted summary judgment on the bad faith claims because the plaintiffs have not presented clear and convincing evidence of bad faith, and that AIGDC should be granted summary judgment on the statutory bad faith claim because it is not an insurer.

     1.   Undisputed Facts.

     The following facts are not in dispute.   The plaintiffs are in the debt collection business. *Defendants' Statement of Material Facts at ¶1 and the Plaintiff's Opposition to Defendants' Statement of Material Facts to Support Defendants' Motion for Partial Summary Judgment Pursuant to Local Rule of Civil Procedure 65.1 at ¶1.* The plaintiffs purchased an Errors and Omissions insurance policy from defendant Illinois National with the Policy Number 2201997 and a Policy Period of November 1, 1999 to November 1, 2000. *Id. at ¶2.*

13

Under a section titled Coverage Agreements, the Policy provides:

A.    The Company will pay on behalf of the "Insured" "Damages" which the "Insured" shall become legally obligated to pay for any "Claim" first made against the "Insured" and reported to the Company during the "Policy Period" for "Wrongful Acts" of the "Insured" or another for whom the "Insured" is legally responsible committed solely in the conduct of the "Insured's" "Professional Services".

B.    The Company shall have the right and duty to defend the "Insured" against "Claims" for Damages for a covered "Wrongful Act", even if the "Claim" is groundless, false or fraudulent and pay "Claims Expense", as defined herein subject to the policy terms, conditions and exclusions.  The Company shall have the exclusive right to designate legal counsel to represent the "Insured" against such "Claims".

The Company's duty to defend any "Claim" ends after the applicable Limit of Liability has been exhausted by "Claims Expenses", payment of judgments, awards, or interest accruing thereon prior to entry of judgment or issuance of an award and settlements.

*Amended Complaint, Exhibit A.*

The Policy defines "Claim" as follows:

1.    Any judicial, administrative or arbitration proceeding initiated against one or more "Insured"(s) in which such "Insured"(s) may be subjected to a binding adjudication of liability for "Damages"; or

2.    Any written demand from a "Client or Customer" or "Consumer" for money.

14

*Id.*

The Policy defines "Wrongful Act" as follows:

1.  Means a negligent act, error or omission; or
2.   Libel, slander, malicious prosecution, wrongful attachment, wrongful eviction, wrongful entry, false arrest, detention and imprisonment, harassment, interference with business, invasion, infringement or interference with the right of privacy; or
3.  A violation of the Federal Fair Debt Collection Practices Act (FDCPA) or the Fair Credit Reporting Act (FRCA) and as further amended, or other similar state statutes.

*Id.*

The Policy defines "Professional Services" as follows:

1.  Performance as a "Debt Collector";
2.  Dissemination of "Consumer Reports" or "Credit Information" as a "Credit Bureau"; or
3.  Performance of "Check Verification/Recovery Services" as a "Check Verification/Recovery Office".

*Id.*

The Policy contains an exclusion which provides that the policy does not apply to claims "[s]eeking the return of fees or charges for services performed by any "Insured." *Id.*

On October 11, 2000, NRA was sued by another debt collector, Forward Thinking, Inc., with whom NRA had subcontracted to perform debt collection work. *Defendants' Statement of Material Facts at ¶6 and the Plaintiff's*

15

*Opposition to Defendants' Statement of Material Facts to Support Defendants' Motion for Partial Summary Judgment Pursuant to Local Rule of Civil Procedure 65.1 at ¶6.*  The Forward Thinking complaint against plaintiff NRA was filed in the Superior Court of New Jersey. *Amended Complaint at ¶26* and *Answer to Amended Complaint at ¶26.*  By a letter dated October 31, 2000, plaintiff NRA submitted a claim to defendant Illinois National requesting a defense and indemnification for the Forward Thinking Complaint. *Defendants' Statement of Material Facts at ¶9 and the Plaintiff's Opposition to Defendants' Statement of Material Facts to Support Defendants' Motion for Partial Summary Judgment Pursuant to Local Rule of Civil Procedure 65.1 at ¶9.*  By a letter dated November 9, 2000, defendant Illinois National, through AIGTS, informed plaintiff NRA that it would neither defend nor indemnify plaintiff NRA in the matter. *Doc. 79, Exhibit H.*  The basis for that decision was stated to be that the claim does not fall within the scope of the definition of "Wrongful Act" and because Exclusion M, which provides that the policy does not apply to claims seeking the return of fees or charges for services performed by any insured, precludes coverage. *Id.*  Plaintiff NRA never responded to the November 9, 2000 denial letter. *Defendants' Statement of Material Facts at ¶18 and the Plaintiff's Opposition to Defendants' Statement of Material Facts to Support Defendants' Motion for Partial Summary Judgment Pursuant to Local Rule of*

*Civil Procedure 65.1 at ¶18.* On September 21, 1002, AIGTS closed the file on the claim.  *Id. at* ¶20.

On April 22, 2002, Forward Thinking filed an amended complaint against plaintiff NRA, plaintiff DBS, Steven Kusic and Dale Brumbach. *Doc. 79, Exhibit K.*   NRA did not forward the Amended Complaint to Illinois National or AIGTS until two years later, by a letter dated April 15, 2004. *Defendants' Statement of Material Facts at ¶25 and the Plaintiff's Opposition to Defendants' Statement of Material Facts to Support Defendants' Motion for Partial Summary Judgment Pursuant to Local Rule of Civil Procedure 65.1 at ¶25.*  By a letter dated October 1, 2004, defendant Illinois National, through AIGTS, informed plaintiff NRA that it would not provide indemnification in the event of an adverse judgment or award. *Doc. 79, Exhibit M.*  The basis for the decision was again stated to be that the claim does not fall within the scope of the definition of "Wrongful Act" and because Exclusion M precludes coverage. *Id.*

> 2.  Statute of Limitations on Statutory Bad Faith Claim.

The defendants contend that the plaintiffs' bad faith claim under 42 Pa.C.S.A. § 8371 is barred by the statute of

17

limitations.  The plaintiffs contend that the defendants have waived the statute of limitations defense by failing to plead the statute of limitations as an affirmative defense in their answer to the amended complaint.  As discussed above, however, we have concluded that the defendants should be granted leave to amend their answer to plead the statute of limitations.  Thus, we conclude that the defendants have not waived the statute of limitations defense.

A bad faith claim under 42 Pa.C.S.A. § 8371 is governed by a two-year statute of limitations.  *See Haugh v. Allstate Ins. Co.,* 322 F.3d 227, 235-36 (3d Cir. 2003) (predicting that the Pennsylvania Supreme Court would apply two-year tort statute of limitations to statutory bad faith claim).  "In general, the statute of limitations begins to run when a right to institute and maintain suit arises." *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 224-25 (3d Cir. 2005).  "A bad faith claim arises upon a 'frivolous or unfounded refusal to pay proceeds of [a] policy.'" *Id.* at 225.  The statute of limitations for a bad faith claim under § 8371 accrues when the insurer first provides definite notice of a refusal to indemnify or defend. Id.

In the instant case, defendant Illinois National provided clear notice by a letter dated November 9, 2000 that it would neither defend nor indemnify plaintiff NRA in the

18

Forward Thinking case.  Thus, the statute of limitations began
to run on the § 8371 bad faith claim of NRA on or about
November 9, 2000.[2]  The plaintiffs did not commence the instant
case until January 6, 2005.  Thus, it appears that the
plaintiffs' statutory bad faith claim is barred by the statute
of limitations.

The plaintiffs, however, contend that the denial by the
defendants on October 1, 2004 of a defense and coverage for the
claims in Forward Thinking's amended complaint was a separate
and distinct act of bad faith that is not barred by the statute
of limitations.  The plaintiffs point out that the Forward
Thinking amended complaint added new claims.  The plaintiffs
also point out that, whereas the original Forward Thinking
complaint named only NRA as a defendant, the amended Forward
Thinking complaint named NRA, DBS, Kusic and Brumbach as
defendants.

The defendants argue that the denial of coverage and a
defense in 2004 was a denial of the same claim as was denied in

---

[2] The letter denying coverage is dated November 9,
2000.  We recognize that plaintiff NRA may not have received the
letter on that date.  We need not, however, determine the exact
date that plaintiff NRA received the letter because NRA does not
dispute that it received the letter and the few days possibly at
issue would not make a difference in the outcome with regard to the
statute of limitations.

2000 and that pursuant to Pennsylvania law separate denials of the same claim by an insurer do not give rise to separate causes of action for bad faith.

The defendants cite *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033 (Pa. Super.Ct. 1999).  In *Adamski,* the Pennsylvania Superior Court held that the statute of limitations for a bad faith claim under § 8371 accrued when the insurer first provided definite notice of a refusal to indemnify or defend. The Superior Court reasoned that the statute of limitations begins to run as soon as the right to institute suit arises and that this is true regardless of whether the full extent of harm is known when the action arises. *Id.* at 1042.  The plaintiff in *Adamski* had contended that the insurer committed numerous separate and distinct acts of bad faith: refusal to defend or indemnify, denial of liability protection without first seeking declaratory judgment, failure to settle, lack of an adequate basis of denying protection, and failure to conduct a diligent investigation. *Id.* at 1038.  The Superior Court held that each of these alleged acts was related to the initial denial of coverage and that each act does not constitute a separate act of bad faith. *Id.* 1039.  The court stated that plaintiffs "may not separate initial and continuing refusals to provide coverage into distinct acts of bad faith." *Id.* at 1042.

The defendants also cite *Simon Wrecking Co., Inc. v. AIU Ins. Co.,* 350 F.Supp.2d 624 (E.D.Pa. 2004).   In *Simon*, the insured received a Potentially Responsible Party (PRP) letter from the Environmental Protection Agency notifying it that it might in the future incur or might already have incurred liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 in connection with a Superfund Site. *Id.* at 629.   The insured sent the PRP letter to its three insurance companies and requested a defense and coverage arising from the letter. *Id.*   In 1997, two of the three insurance companies denied coverage based on a pollution exclusion in their policies which excluded coverage for damages caused by a discharge of pollution unless such discharge was sudden and accidental. *Id.*   The two insurance companies indicated that the discharge of pollution at the site had not been sudden and accidental. *Id.* At 629.   The third insurance company did not deny coverage but sent a reservation of rights letter and requested more information. *Id.* at 633.   In 2002, the insured notified the insurance companies that it had been sued by other potentially responsible parties over the site. *Id.* at 630.   Applying the reasoning of *Adamski,* the court in *Simon* determined that Simon's bad faith claim against the insurance company that had issued the reservation of rights letter was not barred by the statute of limitations because it had not yet denied coverage. *Id.* at 632.   On the other hand, the court in *Simon* determined that the bad faith claims against

21

the other two insurance companies that had previously denied
coverage was barred by the statute of limitations. *Id.* at 634.
The plaintiff in *Simon* had argued that the insurance companies'
refusals to provide coverage for the suit brought by other
potentially responsible parties were acts of bad faith separate
from the denial of coverage based on the PRP letter and,
therefore, not barred by the statute of limitations. *Id.* at
633.  The court rejected that argument and concluded that the
insurance companies' refusals to provide coverage with respect
to the lawsuit were not separate acts of bad faith but merely
continuing denials of coverage. *Id.* at 633.

Based on these cases and others, the defendants assert
that the statute of limitations on the plaintiffs' statutory
bad faith claim began to run in 2000 when it initially denied
coverage and that its later reaffirmation of that denial does
not amount to a separate act of bad faith.  Therefore, the
defendants argue, the plaintiffs' statutory bad faith claim is
barred by the statute of limitations.

We agree with the defendants that the statutory bad
faith claim of NRA is barred by the statute of limitations.
Defendant Illinois National provided clear notice by a letter
dated November 9, 2000 that it would neither defend nor
indemnify plaintiff NRA in the Forward Thinking case.  Thus,
the statute of limitations began to run on the bad faith claim

against NRA on or about November 9, 2000.  The defendants'
denial of coverage and a defense to NRA after it was made aware
of the amended complaint filed by Forward Thinking is not,
pursuant to the reasoning of *Adamski,* a separate act of bad
faith that started the statute of limitations running anew.
Although the amended complaint filed by Forward Thinking
contained more legal claims than the original complaint, the
amended complaint filed by Forward Thinking contained the same
basic factual allegations against NRA as had the original
complaint.  The defendants' denial of coverage and a defense to
NRA in 2004 was a reaffirmation of its earlier denial in 2000.
Since plaintiff NRA did not commence the instant case until
January 6, 2005, its statutory bad faith claim against the
defendants is barred by the statute of limitations.

        We do not agree, however, that the statutory bad faith
claim of plaintiff DBS is barred by the statute of limitations.
The original complaint filed by Forward Thinking did not name
DBS as a defendant, and the defendants' November 9, 2000 denial
of coverage and a defense can not be seen to have been a
definite notice of a refusal to indemnify or defend as to DBS.
Accordingly, we conclude that plaintiff DBS' statutory bad
faith claim is not barred by the statute of limitations.

We note that the defendants contend that a separate claim by DBS[3] based on the amended complaint filed by Forward Thinking would not be considered a timely claim under the policy. The defendants reason that since the policy in this case is a claims-made policy, since under the policy "coverage is limited to liability for claims first made against the insured and reported to the company while the coverage is in force during the policy period, or extended reporting period, if any, and provided that all terms, conditions and exclusions of the policy are met" *(Doc. 47, Exhibit A - Claims-Made Form)* and since the amended complaint filed by Forward Thinking did not open a new proceeding, the amended complaint did not constitute a new claim within the meaning of the policy. The defendants further argue that if the amended complaint filed by Forward Thinking does constitute a new and separate claim under the policy, it would not be covered by the policy which only covers claims made during the policy period - November 1, 1999 to November 1, 2000. The defendants continue that if the amended complaint filed by Forward thinking is construed as a new claim under the policy, then that claim, whether construed as being made on April 15, 2004 (the date the plaintiffs sent the amended complaint to the defendants) or on April 22, 2002

---

[3] The defendants made this argument as to both of the plaintiffs. However, since we have already determined that plaintiff NRA's statutory bad faith claim is barred by the statute of limitations, we consider the argument only with respect to plaintiff DBS.

(the date the amended complaint was received by the plaintiffs), would be well outside the coverage period of the policy.  The defendants assert that plaintiff DBS can not have it both ways - the amended complaint filed by Forward Thinking can not be a new claim for purposes of its bad faith claim but not for purposes of its coverage claims.

The defendant may have a strong argument that DBS's claim for coverage and a defense is not covered under the policy because the claim was  made outside the policy period. Whether or not DBS's coverage and defense claim is covered under the policy is a question that goes to the merits of DBS's bad faith claim because if DBS's claim is not covered under the policy then it follows that the defendants' denial of coverage and defense to DBS can not be seen to have been in bad faith. However, whether DBS's claim is covered under the policy is a question separate from whether or not DBS's statutory bad faith claim is barred by the statute of limitations.

In summary, we conclude that the statutory bad faith claim of plaintiff NRA is barred by the statute of limitations but that the statutory bad faith claim of plaintiff DBS is not barred by the statute of limitations.

   3.   Merits of Statutory Bad Faith Claim Against
   Plaintiff DBS.

   The defendants argue that they are entitled to summary
judgment on the statutory bad faith claim of plaintiff DBS[4]
because the plaintiff has not presented clear and convincing
evidence of bad faith.

   42 Pa.C.S.A. § 8371 provides:

        In an action arising under an insurance
   policy, if the court finds that the insurer has
   acted in bad faith toward the insured, the
   court may take all of the following actions:

        (1) Award interest on the amount of the
   claim from the date the claim was made by the
   insured in an amount equal to the prime rate of
   interest plus 3%.

        (2) Award punitive damages against the
   insurer.

        (3) Assess court costs and attorney fees
   against the insurer.

   "Bad faith" is not defined in the statute.   The
Pennsylvania Superior Court has defined "bad faith" as "'any
frivolous or unfounded refusal to pay proceeds of a policy.'"
*Terletsky v. Prudential Property and Cas Ins. Co.*, 649 A.2d
680, 688 (1994)(quoting *Black's Law Dictionary* 139 (6th ed.

---

        [4] Again we note that that the defendants made this
argument as to both of the plaintiffs. However, since we have
already determined that plaintiff NRA's statutory bad faith claim
is barred by the statute of limitations, we consider the argument
only with respect to plaintiff DBS.

                              26

1990)).   "To make out a claim of bad faith, a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim." *W.V. Realty, Inc. V. Northern Ins. Co.,* 334 F.3d 306, 312 (3d Cir. 2003).   "Although the insurer's conduct need not be fraudulent, 'mere negligence or bad judgment is not bad faith.'" *Northwestern Mut. Life Ins. Co. v. Babayan,* 430 F.3d 121, 137 (3d Cir. 2005)(quoting *Brown v. Progressive Ins. Co.,* 860 A.2d 493, 501 (Pa.Super.Ct. 2004)).   "The insured must ultimately show that 'the insurer breached its duty of good faith through some motive of self-interest or ill will.'" *Id.*  The insured must prove bad faith by clear and convincing evidence. *Babayan, supra,* 430 F.3d at 137.  "At the summary judgment stage, the insured's burden in opposing a summary judgment motion brought by the insurer is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.'" *Id.* (quoting *Kosierowski v. Allstate Ins. Co.,* 51 F.Supp.2d 583, 588 (E.D.Pa. 1999)).

In a Memorandum and Order dated August 26, 2005 and issued in connection with the defendants' motions for judgment on the pleadings, we reviewed the counts of the amended complaint filed by Forward Thinking and determined that only Counts 5, 15 and 16 of that complaint are possibly within the

coverage of the policy.  Counts 5, 15 and 16 of the amended complaint filed by Forward Thinking seek relief against NRA but not DBS.  As we have already determined that none of the counts in the amended complaint filed by Forward Thinking that seek relief against DBS are possibly within the coverage of the policy, it follows that the defendants can not be seen to have acted in bad faith within the meaning of 42 Pa.C.S.A. § 8371 in denying a defense to DBS.  Accordingly, we will grant summary judgment to the defendants on plaintiff DBS's statutory bad faith claim.

### 4. Common Law Bad Faith Claim.

The defendants argue that the plaintiffs' common law bad faith claim fails for the same reason that their statutory bad faith claim fails - they have not proven by clear and convincing evidence that the defendants lacked a reasonable basis for their coverage decision.

To the extent that there is a common law bad faith cause of action in Pennsylvania, it appears that such a cause of action is contractual in nature.  *See Haugh v. Allstate Ins. Co.,* 322 F.3d 227, 236-37 (3d Cir. 2003).   The parties, however, have not briefed the common law bad faith claim as a contractual claim.   Accordingly, we will not address the common law bad faith claim at this point in time.

C.  Plaintiffs' Motion for Partial Summary Judgment.

The plaintiffs are seeking partial summary judgment on Counts I and II of their amended complaint.

The plaintiffs contend that the court should enter a declaratory judgment stating that defendant Illinois National had, and continues to have, a duty to defendant NRA, DBS, Kusic and Brumbach against the claims of Forward Thinking.

The plaintiff cites to our Memorandum and Order dated August 26, 2005 in which we addressed the defendants' motions for judgment on the pleadings.  The plaintiffs assert that in that Memorandum and Order the court concluded that Illinois National owes NRA, DBS, Brumbach and Kusic a defense.   The plaintiffs then contend that, pursuant to the law of the case doctrine, they are entitled to a declaratory judgment that defendant Illinois National had, and continues to have, a duty to defend NRA, DBS, Kusic and Brumbach against the claims of Forward Thinking.

"[L]aw of the case is an amorphous concept." *Arizona v. California,* 460 U.S. 605, 618 (1983).  "As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same

29

issues in subsequent stages in the same case." *Id.*  The law of
the case doctrine expresses the practice of courts generally to
refuse to reopen what has been decided. *Messenger v. Anderson*,
225 U.S. 436, 444 (1912).  "The doctrine is designed to protect
traditional ideals such as finality, judicial economy and
jurisprudential integrity." *In re City of Philadelphia Litig.,*
158 F.3d 711, 717-18 (3d Cir. 1998).

Although generally reluctant to do so, courts in their
discretion retain the power to reconsider questions of law that
have already been decided in the same proceeding. *Christianson
v. Colt Industries Operating Corp.,* 486 U.S. 800, 817 (1988)("A
court has the power to revisit prior decisions of its own or of
a coordinate court in any circumstance, although as a rule
courts should be loathe to do so in the absence of
extraordinary circumstances such as where the initial decision
was clearly erroneous and would work a manifest injustice.").
*See also* Fed.R.Civ.P. 54(b)(providing that until the court
expressly directs entry of a final judgment an order that
resolves fewer than all of the claims among all of the parties
"is subject to revision at any time before the entry of
judgment adjudicating all the claims and the rights and
liabilities of all the parties.).  "Law of the case directs a
court's discretion, it does not limit the tribunal's power."
*Arizona, supra,* 460 U.S. at 618.  Under law of the case rules,
"it is not improper for a court to depart from a prior holding

30

if convinced that it is clearly erroneous and would work a manifest injustice." *Id.* at 619. n.8.  Although the court may reconsider its prior rulings, when doing so it must explain on the record the reasoning behind its decision to reconsider the prior ruling and it must take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling. *Williams v. Runyon,* 130 F.3d 568, 573 (3d Cir. 1997).

Although we have no intention of revisiting the determinations we made in the Memorandum and Order of August 26, 2005, we do not agree with the plaintiffs that based on that Order they are entitled to entry of a declaratory judgment stating that defendant Illinois National had, and continues to have, a duty to defend NRA, DBS, Kusic and Brumbach against the claims of Forward Thinking.  In the Memorandum and Order of August 26, 2005 we addressed the arguments that the defendants made in connection with their motions for judgment on the pleadings.  We determined that the defendants were not entitled to judgment on the pleadings.  We did not affirmatively determine that the plaintiffs were entitled to a declaratory judgment.

In most instances, in the Memorandum and Order of August 26, 2005 we were careful to couch our determination of the defendants' arguments in terms that indicated only that the defendants were not entitled to judgment on the pleadings.

Where we determined that specific counts of Forward Thinking's complaint and amended complaint did not fall within the coverage provisions of the policy we explicitly so held. However, as to the remaining counts we did not specifically hold that the defendants owed the plaintiffs a duty to defend but only that we could not say that those counts do not come under the coverage of the policy.   For example, we stated: "We can not say that the claims in Counts 5, 15 and 16 of Forward Thinking's amended complaint do not come under the coverage of the policy, and, accordingly, we can not say that Illinois National does not have a duty to defend the plaintiffs." *Doc. 44* at 25.

We did, however, in connection with the discussion of Count 4 of Forward Thinking's original complaint state: "Accordingly, we cannot say that that claim does not come under the coverage of the policy.   Thus, defendant Illinois National had a duty to defend plaintiff NRA until such time as it were to have become clear that there was no possibility that Forward Thinking could recover on that claim." *Doc. 44* at 23. Nevertheless, we later discussed the defendants' arguments regarding Exclusion M of the policy.   Thus, we think it should have been clear that prior statement regarding Count 4 was merely a statement that Count 4 comes under the coverage of the policy's terms with respect to the duty to defend but not necessarily that there could not be other reasons (exclusions)

32

why the defendants would not owe NRA a defense.  Moreover, we
noted in the Memorandum and Order of August 26, 2005 that the
defendants had argued in a footnote in their brief that
Exclusion G of the policy is applicable but that in connection
with the motion for judgment on the pleadings we would not
address that argument since it was only raised in a footnote.
*Doc. 44* at 29 n.4.  We think it clear that in the Memorandum
and Order we were addressing only the arguments raised by the
defendants and that we did not affirmatively determine that the
defendants owed the plaintiffs a defense.

        Absent other arguments (such as other exclusions of the
policy), the logical conclusion of the Memorandum and Order of
August 26, 2005 may be that Illinois National owed plaintiff
NRA a defense.  However, based on the law of the case, we can
not conclude that the plaintiffs are entitled to a declaratory
judgment stating that defendant Illinois National had, and
continues to have, a duty to defendant NRA, DBS, Kusic and
Brumbach against the claims of Forward Thinking.

        Based on the Memorandum and Order of August 26, 2005,
the plaintiffs are also seeking partial summary judgment on
Count II of their amended complaint.  The plaintiffs are
seeking summary judgment as to liability on their breach of
contract claim with the amount of damages to be determined at
trial.  As discussed above, the plaintiffs are not entitled to

summary judgment based on the Memorandum and Order of August 26, 2006 and the law of the case doctrine.

We will deny the plaintiffs' motion for partial summary judgment.  We note, however, that we expect counsel for the parties to confer in good faith prior to the pretrial conference in this case to narrow the issues, if any, that are truly in dispute with regard to Counts I and II of the plaintiffs' amended complaint.

IV.  Order.

**IT IS ORDERED** that the defendants' motion (doc. 73) for leave to amend their answer to the amended complaint is **GRANTED** and the Clerk of Court is directed to file and docket the defendants' amended answer (attached to doc. 73).  **IT IS FURTHER ORDERED** that the defendants' motion (doc. 79) for partial summary judgment is **GRANTED IN PART AND DENIED IN PART.** The defendants' motion is granted as to the plaintiffs' statutory bad faith claim, but the motion is denied as to the plaintiffs' common law bad faith claim.  **IT IS FURTHER ORDERED** that that the plaintiffs' motion (doc. 81) for partial summary

judgment is **DENIED**.   The Clerk of Court is directed to delay

entering judgment until the conclusion of the entire case.


_____  ***/s/ J. Andrew Smyser***
                                          J. Andrew Smyser
                                          Magistrate Judge


Dated:  May 9, 2006.